UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Jennifer L. Chase,**

    v.

Case No. 20-cv-915-PB
Opinion No. 2023 DNH 037

**Kilolo Kijakazi, Acting
Commissioner of Social Security**

## MEMORANDUM AND ORDER

Social Security claimant Jennifer Chase retained attorney Francis

Jackson to appeal the Social Security Administration's (SSA) decision to deny

her disability benefits. After Jackson filed a complaint in this court, the SSA

agreed to a voluntary remand for further administrative proceedings, which

ultimately resulted in an award of $100,917 in past-due benefits to Chase.

Invoking his contingent fee agreement with Chase, Jackson now seeks

$19,000 in attorney's fees under 42 U.S.C. § 406(b). Because I conclude that

Jackson is entitled to substantial attorney's fees but that the requested

amount would result in a windfall, I award attorney's fees in the amount of

$15,540.

## I.     BACKGROUND

Jennifer Chase was denied disability benefits following a hearing

before an Administrative Law Judge (ALJ). Doc. 7-3 at 18. After exhausting

her administrative remedies, Chase signed an agreement with Jackson to

appeal her denial to this court. Doc. 16-4 at 1. The agreement provided that, if the appeal succeeded, Chase would "pay a fee equal to twenty five percent (25%) of the total amount of any past-due benefits awarded to [her], to include any dependents benefits, subject to the approval of said fee by the court." Id. at 2.

Jackson then initiated an appeal by filing a boilerplate complaint, a motion to proceed in forma pauperis, and summons. See Doc. 1; Doc. 1-2; Doc. 2. After the SSA submitted the administrative record, Jackson filed a motion to correct the record, noting that it was missing a set of documents submitted to the ALJ after the hearing, and moved to stay the proceedings until after the court ruled on his motion. See Doc. 8 at 2; Doc. 9 at 1. Upon reviewing the record, the SSA agreed to file a corrected record. See Doc. 10 at 1; Doc. 11 at 2. Jackson then filed notice that he would withdraw his motion to correct the record and moved for the stay to remain in effect until after the SSA filed the corrected record. See id. at 2; Doc. 12 at 2. Each of Jackson's motions were granted without contest.

About two months later, before any additional filings were made, the SSA filed an assented-to motion for voluntary remand for further administrative proceedings, which I granted.[1] See Doc. 13 at 1-2. Jackson

---

[1]    In his motion for fees, Jackson states that the motion for remand came after he filed the statement of errors. Doc. 16 at 4. But neither the court's

then moved for attorney's fees under the Equal Access to Justice Act (EAJA),

28 U.S.C. § 2412, and submitted a time record indicating that Jackson's firm

expended 14 attorney hours and 0.8 paralegal hours on the appeal. See Doc.

15 at 1; Doc. 15-1 at 2. I granted the motion, awarding $3,153.34 in attorney's

fees. See id.

Following remand to the SSA, Chase was awarded $100,917 in past-

due benefits, with an ongoing entitlement to approximately $1,617 per month

in benefits. See Doc. 16-1 at 2; Doc. 20 at 4. Jackson now seeks $19,000 in

attorney's fees under 42 U.S.C. § 406(b) for his work before this court,

representing nearly 19% of Chase's past-due benefits. Doc. 16 at 1.

## II.    ANALYSIS

42 U.S.C. § 406(b) allows attorneys to recover a portion of a Social

Security claimant's past-due benefits as compensation for representing the

claimant in federal court. Courts may award fees only for work done before

the court and may not grant fees for work done before the SSA. See 42 U.S.C.

§ 406(b)(1)(A); Clark v. Astrue, 529 F.3d 1211, 1215 (9th Cir. 2008) ("[Section]

406(b) empowers courts to award attorney's fees based only on representation

before the court.").

---

docket, nor Jackson's time records, indicate that a statement of errors was
ever filed. See Doc. 16-5 at 1-2.

In Gisbrecht v. Barnhart, the Supreme Court instructed lower courts to essentially defer to contingent fee agreements negotiated between attorneys and claimants so long as they are "reasonable." See 535 U.S. 789, 807-808 (2002). In doing so, the Court rejected the practice of relying on the lodestar method to calculate attorney's fees under § 406(b). See id. at 806-807. Thus, "the court's responsibility is to begin with the amount sought by counsel under [the] contingent fee agreement and work downward, in an effort to discern the highest fee award that is sensible, justifiable, and proper under the circumstances—that is to say, 'reasonable.'" King v. Kijakazi, 2023 DNH 014 at 10; see also Crawford v. Astrue, 586 F.3d 1142, 1149 (9th Cir. 2009) (calculating reasonable fees begins "with the fee agreement, and the question is whether the amount need be reduced, not whether the lo[de]star amount should be enhanced"). In determining whether fees are reasonable, the Supreme Court in Gisbrecht instructed courts to consider "(1) the character of representation; (2) the results achieved; (3) whether the attorney is responsible for a delay and will profit from an accumulation of benefits during the pendency of the case in court; and (4) whether the benefits are large in comparison to the amount of time counsel spent on the case." Mounce v. Colvin, 2016 DNH 145 at 5-6 (citing Gisbrecht, 535 U.S. at 808). The attorney seeking the fees bears the burden of demonstrating that the fees are reasonable. See Gisbrecht, 535 U.S. at 807.

Jackson asserts that an award of $19,000 is wholly reasonable, emphasizing the excellent results obtained and the inherent risk in taking Social Security appeals on a contingent fee basis. Doc. 16 at 2-3. The SSA did not take a formal position on Jackson's request, but nonetheless filed a response to note that this award would provide Jackson with an "effective hourly rate of $1,283.78" and that it is this court's duty to independently scrutinize the reasonableness of the award. Doc. 18 at 1. In response, Jackson points out that Gisbrecht's rejection of the lodestar method cautions against placing determinative weight on the de facto hourly rate but notes that, regardless, the award sought here would produce a de facto hourly rate in line with that granted by other courts. Doc. 20 at 2, 4; see, e.g., Livingston v. Comm'r of Soc. Sec., 1:18-cv-11797-PBS, ECF No. 32 (D. Mass. Aug, 24, 2020) (approximately $1,450 de facto hourly rate); Davis v. Comm'r of Soc. Sec., No. 4:19-cv-01596-DCC, 2022 WL 4182480 at *1 (D.S.C. Sept. 13, 2022) (approximately $1,185 de facto hourly rate); Kazanjian v. Astrue, No. 09-cv-3678 (BMC), 2011 WL 2847439 at *2 (E.D.N.Y. July 15, 2011) (approximately $2,100 de facto hourly rate). I consider the reasonableness of the award sought in light of each of the four Gisbrecht factors, viewing the de facto hourly rate as but one of several relevant considerations. See Jeter v. Astrue, 622 F.3d 371, 380 (5th Cir. 2010) ("[C]ourts may consider the lodestar in their analyses so long as the court can articulate additional factors demonstrating

that the excessively high fee would result in an unearned advantage."); Fields

v. Kijakazi, 24 F.4th 845, 854 (2d Cir. 2022) (noting that lodestar calculations

and de facto hourly rates may be considered as one of many factors); King,

2023 DNH 014 at 7-8; Enos v. Saul, No. 19-10023-RGS, 2020 WL 6082127 at

*2 (D. Mass. Oct. 15, 2020).

Jackson represented his client ably, no doubt due in part to his

substantial experience in SSA appeals, and took on significant risk in doing

so, given that Chase did not pay a fee up front and had twice been denied

disability benefits. See Doc. 15-2 at 2; Doc. 16-4 at 2-3; Doc. 7-3 at 18; Doc. 7-

4 at 41; see also Fields, 24 F.4th at 854 (noting that, in determining the

reasonableness of fees, courts should consider "the ability and expertise of the

lawyers"); Giles v. Saul, 2020 DNH 025 at 10-11 (noting risk of nonpayment

where the client paid no fee up front and had been denied benefits twice

before). Jackson obtained excellent results, securing not only a substantial

award of past-due benefits, but also an entitlement to ongoing benefits. See

id. at 11 & n.5 (noting that a substantial award of past-due benefits and an

entitlement to ongoing payments is "a reason for approving high attorney's

fees"). And there is no evidence that Jackson engaged in any sort of dilatory

conduct. Each of these considerations weighs in favor of a substantial award

of attorney's fees.

The crux of the matter, then, is whether the award sought would provide Jackson with a "windfall" because "the benefits awarded to the claimant are substantial in comparison to the amount of time [Jackson] spent on the case." See King, 2023 DNH 014 at 6. Here, Jackson spent relatively little time and effort on the case, filing only a nonspecific complaint and a handful of uncontested procedural motions which totaled less than ten pages of filings and contained sparse citations to the law or facts.[2] Compare Fields, 24 F.4th at 856 (awarding requested fees where counsel "submitted a 19-page memorandum of law that was specific and well supported") (cleaned up). Although Jackson's time record indicates that he started the process of drafting a statement of errors, the SSA moved for a voluntary remand before one was ever submitted. Compare Weed v. Colvin, No. 2:14-cv-271-JHR, 2016 WL 3919849 at *3 (D. Me. July 15, 2016) (granting requested award where the attorney "had to research, write and file a complete statement of itemized errors before the commissioner moved to remand"). And, given the SSA's relatively prompt motion for voluntary remand, Jackson's appeal did not

---

[2]    In this way, the instant case is distinguishable from the cases relied on by Jackson, all of which involved more substantial briefing and motions practice. See Livingston, 1:18-cv-11797, ECF No. 14 (motion for order reversing decision of commissioner); Davis, 4:19-cv-01596, ECF Nos. 8, 10 (moving brief and reply brief); Kazanjian, 2011 WL 2847439 at *2 (noting that the attorney filed a "non-boilerplate[] complaint; a moving brief; [and] a reply brief" before obtaining remand).

appear to present particularly complex questions of law or fact. See Fields, 24 F.4th at 856 ("A windfall is more likely to be present in a case . . . where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort . . . That kind of unearned advantage is what the windfall concern really is about."). Yet awarding Jackson $19,000 in fees would result in a de facto hourly rate of $1,283.78—nearly four times his lodestar calculation. Considering the minimal time and effort put into the case compared to the substantial award, I conclude that granting Jackson's request in full would result in a windfall.

The question then becomes by how much Jackson's award should be reduced in order to render it reasonable. This question lacks any sort of "mathematical answer," but rather calls for an "unavoidably subjective" exercise of discretion. See King, 2023 DNH 014 at 15 (quoting Ezekiel v. Astrue, 853 F. Supp.2d 177, 180 (D. Me. 2012)). Nonetheless, I take guidance from several of my colleagues within the First Circuit who have considered a reasonable fee in similar cases where, with relatively little time and effort, Jackson's firm was able to secure a voluntary remand that resulted in a substantial award of past-due benefits. In each of those cases, the court determined that a reasonable fee could be calculated by multiplying the firm's reasonable hourly rate by the amount of hours expended, and then tripling that amount. See, e.g., Enos, 2020 WL 6082127 at *3; Nichols v.

Colvin, 2016 DNH 173 at 7-8; Beaulieu v. Colvin, No. 1:10-cv-454-GZS, 2016 WL 675646 at *3 (D. Me. Jan. 28, 2016), R. & R. adopted by 2016 WL 659685 (Feb. 18, 2016); Ezekiel, 853 F. Supp.2d at 181.

I am persuaded by this approach and conclude that, in light of each of the factors discussed above, awarding Jackson with three times his market rate would constitute a reasonable award. In calculating this amount, I rely on the market rate provided by Jackson in his contingent fee agreement of $350 per hour and the 14.8 billable hours reported in Jackson's application for EAJA fees.[3] Doc. 16-4 at 2; Doc. 16-5 at 1-2. Jackson is therefore entitled to an award of $15,540 in attorney's fees pursuant to 42 U.S.C. § 406(b)(1).

### III.   CONCLUSION

For the foregoing reasons, I grant Jackson's motion (Doc. 16) and award attorney's fees in the amount of $15,540. I direct Jackson to remit to Chase his prior EAJA fee of $3,153.34. See Gisbrecht, 535 U.S. at 796 (requiring attorneys who are awarded fees under both EAJA and § 406(b) to "refund to the claimant the amount of the smaller fee") (cleaned up).

---

[3]   Although 0.8 of these hours was expended by a paralegal, I find it unnecessary to distinguish between paralegal hours and attorney hours for the purpose of determining a reasonable fee in this case, given the negligible difference such a distinction would make. See Nichols, 2016 DNH 173 at 8; Beaulieu, 2016 WL 675646 at *3; see also Siraco v. Astrue, 806 F. Supp.2d 272, 278-279 (D. Me. 2011).

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

April 17, 2023

cc:    Counsel of record